# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE DIVISION

| | |
|---|---|
| **CARL ANTHONY DUPERON** | **CIVIL ACTION NO. 04-2304-LO** |
| VS. | SECTION P |
| **DEPUTY WARDEN VIATOR, ET AL.** | JUDGE MELCANÇON |
| | MAGISTRATE JUDGE METHVIN |

## REPORT AND RECOMMENDATION

Before the court is Carl Anthony Duperon's civil rights complaint (42 U.S.C. § 1983) filed *pro se* and *in forma pauperis* on October 12, 2004. Plaintiff is an inmate in the custody of the Louisiana Department of Public Safety and Corrections. He is incarcerated at the Elayn Hunt Correctional Center (EHCC), St. Gabriel, Louisiana, but he complains that he was denied adequate medical treatment while he was incarcerated at the South Louisiana Correctional Center (SLCC) in Basile, Louisiana during the period from January 12, 2004 – January 28, 2004. He has named SLCC's Deputy Warden Viator and Major Riley as his defendants; he has prayed for compensatory monetary damages.

On December 29, 2004, initial review of plaintiff's complaint was completed and he was ordered to file an amended complaint. [Doc. 4] On January 20, 2005, plaintiff attempted compliance with the order and filed an Amended Complaint. Therein, plaintiff asked the court "...for some more time to get the hospital medical records and the full name of all defendants..." [Doc. 5]

On April 21, 2005 plaintiff advised the court that his attempts to obtain medical records from the University Medical Center (UMC) in Lafayette, Louisiana and the Earl K. Long

Hospital (EKL) in Baton Rouge were unsuccessful. (Among other things, he alleged that he was unable to pay the costs of reproducing the medical records.) He asked the court to "get this information for plaintiff [sic] petition now in court." [Doc. 7]

The undersigned ordered production of plaintiff's medical records from both the Elayn Hunt Correctional Center and the South Louisiana Correctional Center. [Doc. 8] In due course, both facilities responded and provided the requested records. [Docs. 10 and 11] Plaintiff was also provided a copy of these records and, on July 26, 2005 he filed an amended complaint making reference to relevant portions of the records provided. [Doc. 12]

## STATEMENT OF THE CASE

The original complaint [Doc. 1], the first amended complaint [Doc. 5], the second amended complaint [Doc. 12], the exhibits and attachments provided by plaintiff, and, the medical records submitted in response to plaintiff's request [Docs. 11 and 12] establish the following relevant facts:

1. On January 11, 2004, plaintiff advised SLCC authorities that he had sustained an injury to his jaw when he fell from his bunk. A member of the SLCC medical staff was summoned and performed an examination which revealed that plaintiff had sustained a laceration to the left lower gum line. Plaintiff was instructed to rinse his mouth with peroxide and water.

Plaintiff was sent to the UMC in Lafayette, Louisiana for further diagnosis and treatment. [Doc. 11, pp. 22, 29[1]] The examination at UMC revealed a broken mandible; plaintiff was given prescriptions for various medications and referred to the EKL in Baton Rouge for further

---

[1] The pages of the records submitted by SLCC and EHCC have been numbered by the undersigned for identification purposes.

treatment. [Doc. 11, pp. 12-14, 22]

2. On January 12, 2004 plaintiff returned to SLCC and was immediately sent to EKL in "stable but hurting" condition. [Doc. 11, p. 9, 22] He was examined and treated at EKL; his jaw was wired and he was given prescriptions for Lortab®, Penicillin, and Peridex rinse.[2] [Doc. 11, pp. 11, 12, 7, 10] He was returned to SLCC on the same date with his jaws wired shut and transferred to lock-down. [Doc. 11, p. 22] The medications ordered at EKL were administered as directed. According to the medical records, plaintiff was given Lortab® from January 12 – 22 when the prescription was completed. He was administered the penicillin for the same period. He was provided the Peridex® rinse from January 12 – 30. [Doc. 11, p. 43]

On January 16, 2004 plaintiff submitted a sick call complaining that the wires were causing some pain. [Doc. 11, p. 28]

3. Surgery was scheduled for January 20 and on January 19 plaintiff was advised that he was required to fast until after the surgery. [Doc. 11, p. 22] For unknown reasons, the surgery scheduled for January 20 was postponed. [*id.*] On January 23, 2004 his surgery was rescheduled for February 11, 2004. [*id.*]

---

[2] Lortab® is a drug which combines acetaminophine and hydrocodone. This combination of drugs is used to relieve moderate to moderately severe pain. Penicillins are used to treat infections caused by bacteria. They work by killing the bacteria or preventing their growth. Peridex®, or chlorhexidine is used to treat gingivitis. It helps to reduce the inflammation (redness) and swelling of the gums and to reduce gum bleeding. See Medline Plus, a Service of the United States National Libraries of Medicine and the National Institutes of Health. http://medlineplus.gov/

4. On January 25, 2004 plaintiff submitted another sick call. He requested Tylenol for pain. [Doc. 11, p. 39] On January 26, 2004, Motrin® Elixir[3] was prescribed for the plaintiff by Dr. Tassin. [Doc. 11, p. 9]

5. On January 29, 2004 at 7:15 p.m., the SLCC medical department was contacted by Lt. Victorian. Their subsequent examination revealed that plaintiff's jaw was swollen and oozing a foul smelling liquid. Based upon these observations, plaintiff was sent to the UMC for examination and treatment at 7:45 p.m. [Doc. 11, p. 22] Plaintiff remained at UMC until 11:40 a.m. on January 30 when he was returned to SLCC. He was provided a prescription for Keflex[4] and surgery was re-scheduled at EKL for February 2, 2004. [*id.*] On February 2, 2004 plaintiff was sent to EKL for surgery. [*id.*] He returned to SLCC the same day following his surgery. He had been provided Lortab® and Keflex®. It was noted that an incision had been made along his left mandible; plate screws had been inserted and a pressure dressing applied. [Doc. 11, p. 21]

On February 4, 2004, the pressure dressing was removed. Plaintiff's left lower jaw was observed to be slightly swollen and still oozing from the old drainage site. The sutures were noted to be in tact and no new bleeding or other drainage was observed. [*id.*] On February 7,

---

[3] Tylenol® is a form of acetaminophen which is used to relieve pain and reduce fever. Motrin® is a nonsteroidal anti-inflammatory drug (also called NSAID); these drugs are used to relieve symptoms such as inflammation, swelling, stiffness, and joint pain. See Medline Plus, a Service of the United States National Libraries of Medicine and the National Institutes of Health. http://medlineplus.gov/

[4] Keflex® is a form of cephalexin, which is a cephalosporin antibiotic used to treat certain infections caused by bacteria such as pneumonia and bone, ear, skin, and urinary tract infections. See Medline Plus, a Service of the United States National Libraries of Medicine and the National Institutes of Health. http://medlineplus.gov/

2004, the dressing was removed; the site of the surgery was cleaned. Some swelling was noted but no signs of infection to the surgical site were noted. The dressing was then reapplied. [*id.*]

6. On February 9, 2004 plaintiff was "rolled out" or transferred to EHCC. [*id.*]

7. On March 4, 2004, plaintiff mailed an Administrative Remedies Procedure (ARP) grievance to SLCC. In his ARP plaintiff complained of the conditions of confinement in "Bearcat Lockdown" and, he also complained of the inadequate or delayed medical care he received. He claimed that he was unable to file his grievance because he was too sick and because officers would not give him paper and a pen. [Doc. 5, attachment]

On April 4, 2004 plaintiff corresponded with SLCC Warden Copes and inquired about the status of his March 4, 2004 ARP. [*id.*] On April 14, 2004, Deputy Warden Viator responded to plaintiff's April 4 letter stating, "...we have no knowledge of, and are not in possession of, any previous correspondence with any employee at this facility..." Thereafter plaintiff re-submitted his grievance. On May 7, 2004 he was notified that his grievance had been rejected because it was not filed within the thirty day time period mandated by the ARP regulations. [*id.*]

8. Plaintiff filed this complaint on October 12, 2004. In his original complaint he alleged he was put on lockdown following his return from the hospital on January 12, 2004. He acknowledged that he was provided liquid medication four times a day. He complained that the doors to his cell remained locked and therefore, had he vomited during this time, he would have died before the corrections officers could have come to his assistance. He claimed that the physician at EKL ordered him placed in a medical ward and that he complained every day for six days to Major Riley about this fact. He claims that he developed an infection because the defendants failed to bring him to EKL for surgery on January 20 when it was initially scheduled.

[Doc. 1; see also amended complaint, Doc. 5]

## LAW AND ANALYSIS

1. Frivolity Review

When a prisoner is allowed to proceed *in forma pauperis* in a suit against an officer or employee of a governmental entity pursuant to 42 U.S.C. §1983, the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.1915A; 28 U.S.C.1915(e)(2). *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990).

A claim is frivolous if it lacks an arguable basis in law or in fact, *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir.1993); see, *Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992). A civil rights complaint fails to state a claim upon which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998).

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n. 4 (5th Cir.1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir.1986).

District courts must construe *in forma pauperis* complaints liberally, but, they are given broad discretion in determining when such complaints are frivolous. *Macias v. Raul A.*

*(Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994).

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). Nevertheless, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

Plaintiff's complaint specifically describes his theories of liability with respect to each named defendant. Plaintiff has been provided medical records from SLCC and EHCC. The thoroughness of the complaint, the amended complaints, and, the information provided by the plaintiff's medical records convinces the court that plaintiff has pled his best case and need not be afforded any further opportunity to amend.

Accepting all of plaintiff's allegations as true, the court concludes, for the reasons stated hereinafter, that he has failed to state a claim for which relief may be granted and accordingly, recommends dismissal of the complaint as frivolous.

## 2. Medical Care Claims

Plaintiff complains of delayed or inadequate medical care while he was incarcerated at the SLCC during the period between January 11 – February 9, 2004. During this period of time, plaintiff was a convict in the custody of Louisiana's Department of Public Safety and Corrections. A convicted inmate's right to receive adequate and timely medical care is based upon the Eighth Amendment's prohibition against cruel and unusual punishment. That constitutional right is violated only if the defendants act with deliberate indifference to a

substantial risk of serious medical harm which results in injury. Deliberate indifference requires that the defendants have subjective knowledge of the risk of harm. Mere negligence or a failure to act reasonably is not enough. The defendants must have the subjective intent to cause harm. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)

In other words, plaintiff can establish an actionable constitutional violation only if he alleges facts tending to establish that the defendants were deliberately indifferent to his serious medical needs. *Thompson v. Upshur County, Texas*, 245 F.3d 447, 457 (5th Cir.2001). Plaintiff has not made such a showing. While plaintiff has stated facts sufficient to establish a serious medical need, he cannot demonstrate that any of the named defendants acted with deliberate indifference. Deliberate indifference in the context of the failure to provide reasonable medical care to a convicted prisoner means that: (1) the prison officials were aware of facts from which an inference of substantial risk of serious harm could be drawn; (2) the officials actually drew that inference; and (3) the officials' response indicated that they subjectively intended that harm occur. *Id.* at 458-59. "[T]he failure to alleviate a significant risk that [the official] <u>should have perceived</u>, but did not is insufficient to show deliberate indifference." *Domino v. Texas Department of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001). Moreover, "deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson*, 245 F.3d at 459. "Deliberate indifference encompasses only <u>unnecessary and wanton infliction of pain</u> repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir.1997); see also *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir.1999). The fact that a plaintiff disagrees with what medical care is appropriate does not state a claim of deliberate indifference to serious medical needs. See

*Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir.1997).

Plaintiff has not alleged facts sufficient to establish deliberate indifference in this context. The facts alleged by the plaintiff and confirmed by his medical records establish that he was injured on January 11, 2004. His injury was attended to immediately by the SLCC medical staff. The staff provided some first aid and then immediately transported plaintiff to the UMC in nearby Lafayette where a formal diagnosis was made. On the very next day plaintiff was transported to EKL for further examination and treatment. Plaintiff's broken jaw was wired shut and he was provided antibiotics and pain medication. According to the records made available by the plaintiff, the medications ordered by the staff at EKL were administered as directed – plaintiff was given Lortab® and penicillin from January 12 – 22 when both of the prescriptions were completed; he was given the Peridex® rinse from January 12 – 30.

His surgery which had been scheduled for January 20 was postponed for unknown reasons. He complained of pain on January 25 and within one day of that complaint a pain reliever was ordered and apparently administered.

On the evening of January 29, 2004, corrections officers observed that plaintiff was in distress and that his jaw was swollen and oozing a foul smelling liquid. Within thirty minutes of this observation, plaintiff was transported to the UMC for treatment. He remained at UMC until the following morning when he was returned to SLCC and his surgery was re-scheduled for February 2. On that day he was transported to EKL where surgery was performed to relieve his condition. He was returned to SLCC on the same day following surgery and provided pain medication and antibiotics. According to plaintiff's medical records, his recovery was uneventful and by February 7 there were no longer any signs of infection. Plaintiff was then transferred to

EHCC.

Plaintiff has not shown that the defendants were aware of facts from which an inference of substantial risk of serious harm could be drawn; that they actually drew that inference; and that their response indicated that they subjectively intended that harm occur to the plaintiff. See *Thompson v. Upshur County, Texas*, 245 F.3d 447, 458-459 (5th Cir.2001) While plaintiff suggests that the defendants purposely failed to transport him to EKL for the surgery originally scheduled for January 20, he offers no facts in support of this conclusory allegation. Further, the medical records available provide no evidence to support such an allegation.

In any event, whether or not the defendants "should have perceived" a risk of harm to plaintiff, but did not, is of no moment since "...the failure to alleviate a significant risk that [the official] should have perceived, but did not is insufficient to show deliberate indifference." *Domino v. Texas Department of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir.1997); see also *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir.1999).

At best, plaintiff makes a case for negligence or malpractice; his failure to allege facts sufficient to establish deliberate indifference is thus fatal to this claim. Plaintiff's medical care claim lacks an arguable basis in law and in fact and is thus subject to dismissal as frivolous.

### 3. Exhaustion of Administrative Remedies

The Civil Rights of Institutionalized Persons Act, codified at 42 U.S.C. §1997e, was amended on April 26, 1996 by the Prison Litigation Reform Act (PLRA). As amended, §1997e(a) makes the exhaustion of available administrative remedies mandatory in prison

conditions cases.

Section 1997e(a) provides,

> (a) Applicability of Administrative Remedies--No action shall be brought with respect to prison conditions under section 1983 of this title or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

This is a prison condition case, exactly the type of case which can best be resolved by the prison officials without resort to judicial action. With respect to plaintiff's claims, the pleadings and attachments, taken in the light most favorable to the plaintiff, establish that plaintiff failed to exhaust all available administrative remedies before filing this lawsuit as required by 42 U.S.C. §1997e(a).

Plaintiff claims that he filed his first grievance on March 4, 2004. Therein he alleged that he had been unable to file the ARP while at SLCC because he was too sick and because the SLCC corrections officers refused him paper and pen. The SLCC officials contend that plaintiff's grievance was never received. This issue of fact need not be resolved at this time.

The undersigned will assume for the purposes of this Report that plaintiff's March 4 grievance was timely filed at SLCC. Their refusal to consider his complaint was, however, not dispositive of the exhaustion issue.

As noted above, plaintiff was an inmate in the custody of Louisiana's Department of Public Safety and Corrections and was in their legal custody at the times that the events complained of occurred. Administrative remedies procedures have been adopted by the Louisiana Department of Public Safety and Corrections, sheriff's maintaining parish jails or correctional centers, and private corporations maintaining correctional centers. See LSA R.S. 15:1171 *et seq.*;

22 LA ADC Pt. I, § 325(LAC 22:I.325); LR 28:857 (April 2002) (28:4 La.Reg. 857) In relevant part, the regulations governing administrative remedies for prisoners in the custody of the Louisiana Department of Public Safety and Corrections provide:

> G. Process
>
> 1. First Step (Time Limit 40 days)
>
> a. <u>The inmate commences the process by writing a letter to the warden, in which he briefly sets out the basis for his claim, and the relief sought</u> ... This letter should be written to the warden within 30 days of an alleged event. (This requirement may be waived when circumstances warrant. The warden, or his designee, will use reasonable judgment in such matters.) The requests shall be screened by the ARP Screening Officer and a notice will be sent to the inmate advising that his request is being processed or is being rejected. The warden may assign another staff person to conduct further fact-finding and/or information gathering prior to rendering his response. <u>The warden shall respond to the inmate within 40 days from the date the request is received at the First Step.</u>
>
> b. For inmates wishing to continue to the Second Step, sufficient space will be allowed on the response to give a reason for requesting review at the next level. There is no need to rewrite the original letter of request as it will be available to all reviewers at each Step of the process.
>
> 2. Second Step (Time Limit 45 days)
>
> a. <u>An inmate who is dissatisfied with the First Step response may appeal to the Secretary of the Department of Public Safety and Corrections by so indicating that he is not satisfied in the appropriate space on the response form and forwarding it to the ARP Screening Officer within 5 days of receipt of the decision.</u> A final decision will be made by the Secretary and the inmate will be notified within 45 days of receipt. A copy of the Secretary's decision will be sent to the warden.
>
> \* \* \*

4. Deadlines and Time Limits

a. No more than 90 days from the initiation to completion of the process shall elapse, unless an extension has been granted. Absent such an extension, <u>expiration of response time limits shall entitle the inmate to move on to the next Step in the process</u>. Time limits begin on the date the request is assigned to a staff member for the First Step response.

Giving plaintiff the benefit of every doubt, it remains clear that he did not exhaust the final administrative remedy that was available to him by filing an appeal of the Warden's decision to the Secretary of the Department. Under current law, plaintiff must <u>fully</u> exhaust the administrative remedy procedure before proceeding herein. The statute provides for no exceptions.[5] The statute precludes any further action on his claims until he has fully exhausted the administrative remedy procedure. See also *Wendell v. Asher*, 162 F.3d 887, 890-91 (5th Cir. 1998)(§1997e(a) "plainly requires that administrative remedies be exhausted before the filing of a §1983 suit, rather than while the action is pending..." "[t]o hold otherwise would encourage premature filing by potential litigants, thus undermining Congress' purpose in passing the PLRA, which was to provide the federal courts some relief from frivolous prisoner litigation."); *Underwood v. Wilson*, 151 F.3d 292, 296 (5th Cir. 1998)(dismissal for failing to exhaust administrative remedies is justified "as a deterrent to premature filing by...other potential litigants, thus serving the Congressional purpose of providing relief from frivolous prisoner litigation..." and "[b]y choosing to file and pursue his suit prior to exhausting administrative

---

[5] see also *Porter v. Nussle*, 534 U.S. 516, 532, 122 S.Ct. 983, 992, 152 L.Ed.2d 12 (2002), "... we hold that the PLRA's exhaustion requirement <u>applies to all inmate suits about prison life</u>, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. (citation omitted)"

remedies as required, [the plaintiff] sought relief to which he was not entitled--that is, federal court intervention in prison affairs prior to the prison having had the opportunity to address the complaint within its grievance procedures.").

Thus, and in the alternative, plaintiff's complaint is subject to dismissal for his failure to completely exhaust administrative remedies.

Accordingly,

**IT IS RECOMMENDED** that plaintiff's Civil Rights Complaint be **DISMISSED** as frivolous and for failing to state a claim for which relief may be granted in accordance with the provisions of 28 U.S.C. § 1915(d)(2)(b)(i) and (ii) and § 1915A(b)(1).

In the alternative,

**IT IS RECOMMENDED** that plaintiff's Civil Rights Complaint be **DISMISSED** for his failure to exhaust all available administrative remedies prior to filing suit.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See,*

15

*Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

**THUS DONE AND SIGNED** in Chambers at Lafayette, Louisiana, this 26th day of September, 2005.

MILDRED E. METHVIN
UNITED STATES MAGISTRATE JUDGE

SENT
DATE 9-26-05
BY: CM
TO: MOM
TUM/PJ